**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CINDY WILTON,

Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. CV 09-5706 JCG

**MEMORANDUM OPINION AND ORDER**

**I.**

**INTRODUCTION AND SUMMARY**

On August 14, 2009, plaintiff Cindy Wilton ("Plaintiff") filed a complaint against defendant Michael J. Astrue, the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), seeking review of the denial of an application for supplemental security income ("SSI"). [Docket No. 4.]

On March 11, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 15, 16, 18.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 19.] Both Plaintiff and Defendant

subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 20, 23.]

On May 14, 2010, the parties submitted a detailed, 57-page joint stipulation for the resolution of issues presented in this case. [Docket No. 22.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that the Administrative Law Judge ("ALJ") inappropriately discounted Plaintiff's subjective complaints with respect to her mental impairments and thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 42 years of age on the date of her administrative hearing, has a high school education. (Administrative Record ("AR") at 25, 93, 111.) Plaintiff has no past relevant work. (*Id.* at 22.)

Plaintiff protectively filed for SSI on January 3, 2007, alleging that she has been disabled since December 31, 2004 due to bipolar disorder, obsessive compulsive disorder, attention deficit disorder, and carpal tunnel syndrome. (*See* AR at 60, 66, 93, 100.) Plaintiff subsequently amended her alleged onset date to January 3, 2007, the protective filing date of her SSI application. (*Id.* at 16, 27.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 57, 58, 59-64, 66-70.)

On April 15, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (AR at 25, 28-46.) The ALJ also heard testimony from Sharon Spaventa, a vocational expert ("VE"), and Leanna Kennedy, Plaintiff's aunt ("Ms. Kennedy"). (*Id.* at 46-52, 52-56.)

On May 4, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 16-

23.) Applying the five-step sequential evaluation process – which is discussed below – the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (*Id.* at 18.) At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of substance induced mood disorder, depressive disorder, not otherwise specified, polysubstance dependence in remission, and personality disorder, not otherwise specified. (*Id.*)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1/] (AR at 18.)

The ALJ then assessed Plaintiff's residual functional capacity[2/] ("RFC") and determined that she can perform "a full range of work at all exertional levels but with the following nonexertional limitations: restriction to simple, repetitive tasks not requiring a fast paced high production quota and not requiring interaction with the general public." (AR at 19 (emphasis omitted).)

The ALJ found, at step four, that Plaintiff has no past relevant work. (AR at 22.)

At step five, based on Plaintiff's vocational factors and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including "agricultural packer" and "laundry worker." (AR at 22 (emphasis omitted).) Thus, the ALJ concluded that Plaintiff

---

[1/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

was not suffering from a disability as defined by the Act. (*Id.* at 16, 23.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 9.) The ALJ's decision stands as the final decision of the Commissioner.

**III.**

**APPLICABLE LEGAL STANDARDS**

A. Five-Step Inquiry to Ascertain a Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits: (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements. The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity? If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months? If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner under 20 C.F.R. part 404, subpart P, appendix 1? If so, the claimant is automatically determined to be disabled.

Fourth, is the claimant capable of performing his past work? If so, the claimant is not disabled.

Fifth, does the claimant have the so-called "residual functional capacity" to perform some other type of work? The critical question posed here is whether the claimant can, in light of the impairment and his or her age, education and work

experience, adjust to another form of gainful employment?

If a claimant is found "disabled" or "not disabled" along any of these steps, there is no need to complete the remaining inquiry. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

B. Standard of Review on Appeal

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**IV.**

**ISSUES PRESENTED**

Three disputed issues are presented for decision here:

1. whether the ALJ's finding on Plaintiff's RFC is supported by substantial evidence and whether the hypothetical question presented to the VE was incomplete, (*see* Joint Stip. at 4-15, 24-27);

2. whether the ALJ improperly rejected the opinions of Plaintiff's treating physicians, (*id.* at 27-33, 33-35); and

3. whether the ALJ improperly discredited Plaintiff's credibility and improperly discounted the statements of three lay witnesses. (*Id.* at 35-45, 52-56.)

Under the circumstances here, the Court finds the issue of the ALJ's assessment of Plaintiff's credibility to be dispositive of this matter, and declines to substantively address the remaining issues.

**V.**

**DISCUSSION AND ANALYSIS**

As identified above, Plaintiff contends that the ALJ improperly discounted her testimony regarding an "inability to concentrate which results in her not staying on task, causing difficulty with employment, her habitual tardiness, her becoming overwhelmed and crying on the job or responding with anger." (*See* Joint Stip. at 37 (internal citations omitted); *see also id.* at 35-40, 52-54.) Plaintiff maintains that the "ALJ made no specific finding that [she] was a malingerer." (*Id.* at 37-38.)

Plaintiff also alleges that the "only true credibility analysis provided by the ALJ in the decision is [that Plaintiff's] daily activities[] . . . are inconsistent with inability to perform any work" and that Plaintiff's statements "are not credible to the extent that they are inconsistent" with the ALJ's RFC assessment. (Joint Stip. at 38 (internal quotation marks and citation omitted).)

Defendant counters that the ALJ appropriately discounted Plaintiff's credibility because: (1) "the objective medical evidence did not support the degree

of disability alleged by Plaintiff"; (2) "the ALJ observed that the intensity of Plaintiff's treatment was not consistent with the level of disability she alleged"; and (3) "the ALJ noted that Plaintiff's reported daily activities are far out of line with the level of disability she alleged." (Joint Stip. at 46-47.)

A. The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

Plaintiff, of course, carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17, 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain.") (internal citation omitted).

Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 16-23.) Thus, the ALJ's reasons for rejecting Plaintiff's credibility must be *clear and convincing*. *See Benton*, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

B. Plaintiff's Subjective Complaints

At the administrative hearing, Plaintiff testified that she was on medication for schizophrenia in high school and was diagnosed as bipolar when she was sixteen years old. (AR at 34.) Plaintiff also explained that she was diagnosed with obsessive compulsive disorder in 1999 and with attention deficit disorder in high school. (*Id.* at 38.) Plaintiff stated that she "was in a group home in Santa Barbara . . . for people with mental illness" and completed high school at the home as a "special ed" student. (*Id.* at 34)

Plaintiff testified that she previously worked part-time at Kmart, a position her ex-husband helped her obtain. (AR at 35.) Plaintiff stated that she has a "problem with tardiness" and was late roughly "75% of the time" when she was working despite having reminders and assistance from her parents. (*Id.* at 32, 37-38.) Plaintiff explained that a "[l]ack of concentration" inhibits her ability to work and that her supervisor "would give [her] reminders" to "stay on task." (*Id.* at 29-30.) Plaintiff reported that she was eventually fired after her supervisor left and a "new supervisor came in," who "wasn't so understanding." (*Id.* at 36.)

Plaintiff also testified that she has "crying spells" and has difficulty with "anger." (AR at 36, 39-40.) Plaintiff indicated that she has been treated at "County Mental Health" since she was approximately eleven years old, but more recently since 2006. (*Id.* at 43.) Plaintiff stated that she sees a therapist individually and attends group therapy. (*Id.* at 33.) Plaintiff reported that she receives treatment from a psychiatrist every six weeks and is "taking Zoloft" after experiencing negative side effects from other medication. (*Id.* at 44.)

Plaintiff stated that with she was "jailed in 2006 because of [a] probation violation with [a] meth charge," but has been sober since she was released. (AR at 31.)

Plaintiff indicated that her daily activities include "an exercise class" for "physically disabled" individuals at Ventura College, doing dishes, laundry, and grocery shopping. (AR at 31-32, 40-41.) However, Plaintiff described "doing the dishes" as "overwhelming" and grocery shopping as "mak[ing her] nervous" because she does not "like to be around a lot of group of people." (*Id.* at 40-41.)

C. The ALJ's Purported Reasons For Finding Plaintiff's Testimony Non-Credible

In rejecting Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment[.]" (AR at 21.) The ALJ explained:

> [Plaintiff] testified that although she graduated high school, she attended special education classes at least partially due to the side effects of Lithium which she took for bipolar disorder. She testified that she has not abused drugs for 3 years following participation in a court ordered program, but says she is easily overwhelmed, and has crying spells at least two times a month. She has seen Dr. Woods[, her treating psychiatrist,] approximately every 6 weeks since July 2008 and is prescribed Zoloft, with some improvement in symptoms.
>
> [Plaintiff] testified that when she was working, her manager would have to remind her to stay on task as she could not concentrate for more than a maximum of 15 minutes. She stated that she was chronically tardy (at least 75% of the time) and does not believe she could attend work on a reliable basis, noting that she is sometimes late for her weekly therapy and group therapy sessions. The record references a community

> college class that [Plaintiff] stated is an exercise class she attends twice a week. . . .
>
> [Plaintiff's] daily activities, including caring for her children, doing housework, grocery shopping, caring for her grandparents, and attending community college are inconsistent with inability to perform any work.

(*Id.* at 21-22.)

D. Plaintiff's Testimony Merits Consideration

Having examined the AR, the Court is persuaded that the ALJ failed to provide clear and convincing reasons and/or substantial evidence for discounting Plaintiff's credibility. The Court's conclusion rests on at least two reasons.

First, because Plaintiff produced sufficient medical evidence of her mental impairments that are likely to cause the subjective symptoms, the ALJ erred to the extent she rejected Plaintiff's credibility based upon a lack of objective findings to support her allegations. There are numerous indicia in the medical record supporting Plaintiff's mental impairments, including the following six instances:

1. Treatment note from Ventura County Behavioral Health Mental Health Services ("Ventura County Mental Health Services"), dated January 4, 2006, diagnosed Plaintiff with substance induced mood disorder, depressive disorder, and borderline personality and reported Plaintiff's extensive mental impairment history, which includes two suicide attempts and suicidal thoughts as a child. (AR at 200-07.)

2. Nursing Assessment of Psychiatric and Suicidal Inmate from California Forensic Medical Group, dated September 4, 2006, diagnosed Plaintiff with depression and reported prior hospitalization for attempted suicide in 1987. (*Id.* at 238.)

3. Treatment note from Ventura County Mental Health Services, dated January 29, 2007, indicated Plaintiff suffered from "mood swings" and depression,

but "mood is more even [and] stable now on Depakote [and] Zoloft." (*Id*. at 305.)

4. Case analysis, completed by non-examining physician and dated May 16, 2007, indicated Plaintiff "was very cooperative during interview" and reported that Plaintiff indicated she has "trouble focusing, learning and concentration." (*Id.* at 285-88.)

5. Treatment note from Ventura County Mental Health Services, dated January 12, 2009, diagnosed depression, not otherwise specified, borderline personality, and polysubstance dependence "remitted" and prescribed Zoloft. (*Id*. at 340.)

6. Mental Impairment Questionnaire, dated March 23, 2009 and completed by treating physician, indicated "patient's mood is fair, she is emotionally labile" and "is quick to anger and quick to tears." (*Id*. at 363-70.)

Defendant contends that "[a]ll of the independent physicians who . . . reviewed the medical record opined that Plaintiff could work with some limitations so long as she refrained from taking methamphetamines."[3/] (Joint Stip. at 46.)

---

[3/] Although the Court declines to address Plaintiff's claim regarding the ALJ's evaluation of the medical evidence, the Court notes that the ALJ's rejection of Plaintiff's treating physician Celia Woods, M.D. ("Dr. Woods") does not appear to be supported by substantial evidence.

First, the ALJ's rejection of Dr. Woods's opinion based on her reliance on "information received from treating social worker Ms. Miller" is unpersuasive. (AR at 20.) Where the treating physician is "transmitting both his own knowledge and opinion of [the claimant] *and* those of the medical treatment team under his supervision[,]" the treating physician is entitled to complete a RFC assessment on behalf of his treatment team. *Benton*, 331 F.3d at 1039 (italics in original). While the ALJ may assign less weight to a treating physician by considering whether the physician "saw [claimant] with a frequency consistent with accepted medical practice for this type of treatment, . . . [the] ongoing prescription and medication management of [claimant's] evaluations" and "how well the treatment team operated in informing [the treating physician,]" *Benton*, 331 F.3d at 1039, the ALJ did not make any findings taking into account such considerations. (*See generally* AR at

However, the "independent physicians" referred to by Defendant are non-examining and non-treating physicians, whose opinions standing alone, do not constitute "substantial" evidence. (AR at 20-21 (ALJ adopting the opinions of three non-examining and non-treating physicians with respect to Plaintiff's mental impairments), 285-88 (case analysis report completed by G.A. Jansen, M.D. ("Dr. Jansen") on May 16, 2007), 289-99 (psychiatric review technique form completed by Donald Williams, M.D. ("Dr. Williams") on June 6, 2007), 304 (one-page case analysis completed by Calmeze H. Dudley, M.D. ("Dr. Dudley") on November 8, 2007)); *see Lester*, 81 F.3d at 832 ("In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . the examining [physician]'s opinion."); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion, *with nothing more*, does not constitute substantial evidence[]") (internal quotation marks, brackets and citation omitted) (italics in original); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (when the non-treating, non-examining physician's opinion conflicts with the conclusions of examining physicians, that conclusion does not constitute substantial evidence).

Additionally, the opinions of the "independent physicians" Dr. Jansen, Dr. Williams, and Dr. Dudley are undermined because they formed their conclusions without reviewing Plaintiff's subsequent treatment records which are dated through

---

16-23.)

Second, the ALJ's rejection of Dr. Woods's opinion because Dr. Woods's "assessment was internally inconsistent" is belied by the record. In a letter dated April 2, 2009, Dr. Woods explained that she "conferred with therapist Ms. Marcia Miller" and "[b]ased on Ms. Miller's observations of [Ms. Miller's more extensive] interactions, [she has] *amended* [her] assessment of [Plaintiff's] impairments and limitations." (*Id.* at 362 (emphasis added).) Accordingly, Dr. Woods's assessment is not internally inconsistent; instead, she amended her assessment after consulting with a member of her treatment team.

2009. (*See, e.g.,* AR at 339-71.)

Second, the ALJ's rejection of Plaintiff's credibility based on her daily activities fails to meet the clear and convincing standard. Although the ALJ summarized Plaintiff's testimony accurately, in discounting Plaintiff's credibility, the ALJ erred by only citing to the portions of Plaintiff's testimony that supported her conclusion. (AR at 22.) For example, the ALJ stated that Plaintiff's activities included "caring for her children, doing housework, grocery shopping, caring for her grandparents, and attending community college." (*Id.*) The ALJ, however, failed to account for Plaintiff's testimony that doing the dishes is "overwhelming" and grocery shopping makes her "nervous." (*Id.* at 40-41.) The ALJ failed to explain that the "community college" class Plaintiff attends is merely an exercise class for physically disabled individuals, and that Plaintiff testified she does not "get to school on time." (*Id.* at 31-33.)

Further, while Plaintiff's aunt Ms. Kennedy testified that Plaintiff "helps [her] with grandma," she also explained that Plaintiff has difficulty being on time and "gets really flustered," and "has a lot of trouble staying calm." (AR at 46-49.) Thus, the ALJ erred in selectively relying on the record to support her rejection of Plaintiff's testimony. *See Reddick*, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record."); *Gallant*, 753 F.2d at 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted).

Moreover, the ALJ fails to demonstrate how Plaintiff's ability to perform certain daily activities translates into an ability to work. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the

effect that ability to perform daily activities translated into the ability to perform appropriate work); *Reddick*, 157 F.3d at 722 (only if a plaintiff's level of activity is inconsistent with her alleged limitations will these activities have any bearing on claimant's credibility); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

Defendant argues that "the ALJ observed that the intensity of Plaintiff's treatment was not consistent with the level of disability she alleged." (Joint Stip. at 47.) However, the ALJ did not rely on this reason in rejecting Plaintiff's credibility. The Court's review is limited to the reasons *actually* provided by the ALJ in her decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts[ and i]t was error for the district court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss.") (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

In any event, a review of the record reveals that Plaintiff's treating physician saw Plaintiff every six weeks and prescribed anti-depressants to treat her symptoms. (*See, e.g.*, AR at 339-60.) Plaintiff's treating physicians increased her dosage of Zoloft from 50 milligrams in 2006 to 150 milligrams in 2009. (*See id.* at 45, 233.) Plaintiff also attends individual therapy sessions every other week and group therapy once a week. (*Id.* at 363.) The ALJ's disagreement with Plaintiff's treating physician's prescribed course of treatment improperly substitutes her judgment for the judgment of Plaintiff's treating physician. *See Tackett*, 180 F.3d at 1102-03 (ALJ may not substitute his own interpretation of the medical evidence for the

opinion of medical professionals); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ erred by relying upon "his own exploration and assessment" of plaintiff's medical condition rather than medical evidence in the record); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000, *as amended* Dec. 13, 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.") (internal quotation marks, alterations and citations omitted).

## VI.

## <u>REMAND IS APPROPRIATE</u>

This Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000), *cert. denied*, 531 U.S. 1038 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, there are outstanding issues which must be resolved before a final determination can be made. On remand, the ALJ shall reconsider Plaintiff's subjective complaints with respect to her mental impairments and the resulting limitations, and either credit Plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. The ALJ shall reassess

the medical opinions in the record and provide sufficient reasons under the applicable legal standard for rejecting any portion of the medical opinions. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.[4/]

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: November 22, 2010

Hon. Jay C. Gandhi
United States Magistrate Judge

[4/] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions. (*See* Joint Stip. at 4-15, 24-27, 27-33, 33-35, 40-45, 54-56.)